[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs William and Marie Wynn own real property having an address of 1966 Main Street North in Woodbury (the "Property"). They bring this action alleging that the defendant James Belta, who owns land adjacent to the Property, has obstructed the plaintiff's easement across Belta's land and has forced the plaintiffs to use an alternate right of way which is unacceptable to the plaintiffs.
Most of the facts are not in dispute. The plaintiffs purchased the Property in 1975. Part of the Property is in Woodbury and part is in Watertown. The Property does not have frontage on a road or street. When the plaintiffs acquired the Property, they also acquired an easement (the "Easement") from the Property across the land of the defendant's predecessor in title to Route 6. The deed to the Wynns described the Easement as follows:
 [T]he right to use a certain graveled driveway presently running from the herein described premises across property of Stuart Young and Christine Young to Route #6 in the Town of Watertown, for vehicular and pedestrian travel, subject to the requirement of maintaining said driveway, as granted and provided in a certain deed of Stuart Young and Christine Young dated Jan. 19, 1972, which deed is recorded in the Land Records of the Town of Watertown.
The 1972 deed which first created the Easement described it as: CT Page 4332-G
 A passway right for vehicular and pedestrian traffic over the gravel driveway presently running from property owned by the Grantees across our land to the Old State Road in Woodbury, more particularly described as Route #6.
 It is further particularly agreed and understood that this passway easement shall terminate if and when the Town Line Road abutting the property of the Grantees shall become maintained by the Town and passable for vehicular and pedestrian traffic.
Shortly after acquiring the Property and the Easement, the plaintiff William Wynn, who is in the paving business, paved the graveled easement driveway. From 1975 until May, 1994, the plaintiffs used the Easement for access to and from Route 6.
In 1986 the defendant acquired a parcel of land immediately adjacent to the Property approximately six acres in size with frontage on Route 6. A portion of this parcel was encumbered by the Easement and the defendant was aware of the existence of the Easement. In 1987 the defendant filed for subdivision approval in order to divide his land into four building lots. Officials of the state Department of Transportation and the Watertown Planning and Zoning Commission did not want each of the four lots to have its own driveway connecting to Route 6, a state highway. Instead, they preferred to have a single access road from Route 6 which would serve the four lots of the defendant's subdivision as well as the Property, land adjacent to the Property, and an undeveloped tract of land to the rear of the defendant's parcel. These officials wanted the Easement abandoned in favor of the new road, which they felt would provide safer access to Route 6. The defendant filed a subdivision application showing such a new road in accordance with the recommendations of these public officials. The subdivision application was approved by all of the requisite public agencies.
In the fall of 1993, the defendant constructed the new road to Route 6 as shown on the subdivision map (the "Road"). The Road will become a public road at some time in the future, but the plaintiff has not yet paved the Road to the specifications required for a town accepted street. The defendant paved the Road only with a binder course, a preliminary coat in the asphalting process. At this time in 1993 and early 1994, both CT Page 4332-H the Road and the Easement could be used for access to Route 6.
In May 1994, without notice to the plaintiffs, the defendant dug up the asphalt portion of the Easement near its intersection with Route 6 and placed large boulders along the intersection so that the plaintiffs could no longer use the Easement to reach Route 6. The defendant closed off the Easement because terminating it was one of the conditions of his subdivision approval. In July 1994, the plaintiffs brought this action seeking damages and a permanent injunction ordering the defendant to refrain from obstructing or interfering with the Easement.
There is no question that the defendant knowingly obstructed the Easement, precluding the plaintiffs' use of it at all times since May, 1994. There also is no dispute that neither the town of Watertown nor the state of Connecticut DOT ever condemned or arranged for a taking of any portion of the Easement. As a representative of DOT testified, the DOT approves the location of a new road and leaves it to the developer, here the defendant, to resolve any legal obstacles involving property rights.
The defendant testified that he believed he could close off the Easement because his attorney advised him that the Easement had been moved before and was only a temporary easement. The evidence at trial, however, did not sustain these claims. An easement is an interest in land in the possession of another which is not subject to the will of the possessor of the land. Restatement (Second), Property § 450 (1994).
The defendant's claim that the Easement has been previously relocated is based on the language used in 1972 when the Easement was originally created. The 1972 deed states that the Easement was to run "to the Old State Road in Woodbury, more particularly described as Route #6." The defendant's contention about relocating the Easement rests on the fact that the deed states that the Easement was to end at Route 6 in Woodbury,
while the Easement in fact ends at Route 6 in Watertown. From this single fact the defendant infers that the original Easement must have been relocated from Woodbury to Watertown. There was no other evidence presented at trial which supported this claim that the Easement was previously relocated.
The court finds that the reference to "Woodbury" in the CT Page 4332-I 1972 deed was an error which was corrected in later deeds. The 1975 deed to the plaintiffs correctly stated that the Easement was "to Route #6 in the Town of Watertown." (Emphasis added.) Furthermore, a 1972 deed from the Slaters, who were the parties who originally acquired the Easement earlier that same year, referred to the Easement as running "to Route #6 in the Town ofWatertown." (Emphasis added.) Clearly, the use of "Woodbury" in the deed creating the Easement was a mere error which was quickly corrected in later deeds referring to the Easement.
The defendant's second claim is equally without merit. He contends that the plaintiffs' easement was only temporary because it was to "terminate if and when the Town Line Road" abutting the Property should be maintained by the Town and passable. The defendant claims that the Road was taking the place of the Town Line Road and therefore he could terminate the Easement. He cites no legal authority in support of this sweeping claim. Moreover, all the witnesses who testified at trial agreed that the Road is not in the same location as the Town Line Road referenced in the language creating the Easement. Town Line Road was in fact abandoned by both the towns of Woodbury and of Watertown and will never be passable and maintained by either town. The deed creating the Easement provided that the Easement would terminate "if and when" Town Line Road was passable and maintained by the town. (Emphasis added.) The creators of the Easement acknowledged through the use of the word "if" that there was a possibility that Town Line Road might not become passable and maintained by the town. Under those circumstances, the Easement does not terminate. When the language of an easement is clear and unambiguous, a court should not resort to extraneous evidence. Eis v. Meyer,213 Conn. 29, 32 (1989). The Easement was to terminate only if and when Town Line Road became passable and maintained by the town. This has not occurred and the Easement therefore has not terminated.
The defendant filed four special defenses in response to the plaintiffs' complaint. The first alleges that the defendant was "compelled" by state and local authorities to re-locate the Easement. This defense was not supported by any evidence at trial. Nor was it briefed by the defendant and it is therefore deemed abandoned. Collins v. Goldberg, 28 Conn. App. 733, 738
(1992).
The fourth special defense reads, "The Document creating CT Page 4332-J the Plaintiffs' right of way . . . provides for extinguishment of such right of way upon the construction of a road as provided therein." This contention is without merit as set forth above. The Easement was to terminate only upon construction of Town Line Road, not upon construction of any other road.
The remaining two special defenses contend that the plaintiffs are estopped from objecting to the relocation of the Easement and that they have waived any claim for damages or other relief arising out of the relocation. Both claims are based on allegations that the defendant discussed with plaintiff William Wynn the subdivision approval and relocation of the Easement, that the plaintiffs did not object to the relocation and that the defendant relied on the lack of objection in relocating the Easement.
Contrary to his allegations in these special defenses, the defendant testified at trial that he did not show the subdivision or road plans to the plaintiffs. The defendant's attorney testified that he met "very briefly" with Mrs. Wynn once to give her a copy of the subdivision plans showing the location of the Easement. Mrs. Wynn denied any such meeting in her testimony. Mr. Wynn testified that he never met the defendant, but spoke once briefly with a man on a bulldozer. A town staff member testified at trial in 1995 that he saw the plaintiffs at one zoning meeting in 1987 or 1988 concerning the defendant's subdivision application. The plaintiffs denied being present at any such meeting. The court credits the testimony of the plaintiffs. Moreover, even if the defendant had established that the plaintiffs received a copy of the subdivision plan, that plan does not show or state that the Easement was to be relocated or terminated. Also, it should be noted that the defendant in his post-trial memorandum relies on testimony given by Mr. Wynn at his deposition. However, that deposition was never admitted as an exhibit at trial and that testimony is not before the court.
A party claiming estoppel must show first that the opposing party did or said something calculated or intended to induce the other party to believe certain facts and to act on that belief and secondly that he changed his position in reliance on that conduct. Eis v. Meyer, supra, 213 Conn. 34. Where silence is the conduct relied upon as the basis for estoppel, it is essential that there be a showing of circumstances which impose a duty to disclose. Id. It is also necessary that the silence CT Page 4332-K is such that it would naturally mislead the other party. Id.
The defendant failed to establish that either of the plaintiffs was aware of his plan to block the use of the Easement and force them instead to use the Road. Being unaware of the defendant's plans, the plaintiffs' silence cannot be found to be misleading. There is no merit to the special defense of estoppel.
Waiver is the intentional relinquishment of a known right.Wadia Enterprises, Inc. v. Hirschfeld, 224 Conn. 240, 251
(1992). To establish waiver, the party claiming it must show that the opposing party had actual knowledge of the matter which is alleged to be waived. Id., 252. The defendant failed to establish that either of the plaintiffs was aware of his plans to block the Easement and force the plaintiffs to use the Road for access to the Property. Accordingly, the defendant failed to sustain this special defense.
The defendant also filed a counterclaim seeking damages from the plaintiffs for failing to maintain the Easement area, which is owned by the defendant subject to the plaintiffs' Easement, and for overburdening the Easement area. The defendant's post-trial memorandum contains only one brief reference to the counterclaim on the very last page. A claim which is given only cursory attention in the brief without substantive discussion or citation of authorities is deemed to be abandoned. State v. Sewell, 38 Conn. App. 20, 28 (1995). Analysis is required in order to avoid abandoning an issue by failing to brief it properly. Cummings v. Twin Tool ManufacturingCo., 40 Conn. App. 36, 45 (1996). The defendant's counterclaim is deemed abandoned in light of his failure to adequately brief the issues raised therein.
By way of relief the plaintiffs seek a permanent injunction restraining the defendant from any further interference with the Easement and money damages for: (a) the cost of restoration of the Easement to its prior condition; (b) the reduction in the fair market value of the Property caused by the loss of the Easement; (c) the damage to the plaintiffs' vehicles from using the Road; and (d) nominal damages. Generally, injunction is the appropriate remedy to stop interference with an easement.Gerald Park Improvement Association v. Bini, 138 Conn. 232, 236
(1951). However, a strict legal right does not entitle a party to injunctive relief if that right is incompatible with the CT Page 4332-L equities of the case. Id; Peckheiser v. Tarone, 186 Conn. 53,61 (1982). If the trial court bases its decision on a permanent injunction on the comparative equities of the parties, its decision will not be an abuse of the discretion rested in it.Waterbury Trust Co. v. G.L.D. Realty Co., 124 Conn. 191, 200
(1938).
In this case, the equities favor the defendant and the use of the Road, which he constructed in accordance with his subdivision approval. The defendant acted on the advice of counsel when he blocked the Easement and therefore the court finds that he did not act wilfully. The court further finds that the Road provides safer access to Route 6 than the Easement did. The Road is considerably wider and meets Route 6 at a 90° angle, with better sight lines for turns. The plaintiffs' principal complaint about using the Road in lieu of the Easement is the poor condition of the Road given that it has a steep slope and is not yet paved to the standards required for a town accepted road. Under the terms of the subdivision approval, however, the defendant is obligated to pave the first fifty feet of the Road to such standards and to grade and slope the remaining part of the Road in accordance with subdivision standards. The current grade meets subdivision standards. The defendant has posted a bond with the town of Watertown to ensure that this road work is done. The deadline for completing the work is sometime in 1996, so the situation will be remedied soon. A final factor mitigating against a permanent injunction is that the plaintiffs' loss of the Easement can be adequately compensated in damages. A licensed real estate appraiser credibly testified at trial that the fair market value of the Property is $10,000 less with access via the Road as compared with access via the Easement. Considering all these factors, the court finds that it would be inequitable to issue a permanent injunction as requested by the plaintiffs.
The court awards the plaintiffs damages of $10,000 as compensation for the decrease in the fair market value of the Property resulting from the loss of the Easement and the use of the Road. This is a proper element of damages where there has been interference with an easement. Expressway Associates II v.Friendly Ice Cream Corporation of Connecticut, 218 Conn. 474,477 (1991). The court also awards the plaintiffs $300 in damages, being the cost of repairs to their motor vehicles caused by the poor condition of the Road. The court will not award the plaintiffs the cost of restoring the Easement because CT Page 4332-M the denial of a permanent injunction makes use of the Easement a moot point. The plaintiffs also claim an award of nominal damages in addition to actual damages, citing the ExpresswayAssociates II case. In that case, the Supreme Court held that the plaintiff, having failed to prove any actual damages, was entitled to nominal damages ($1.00) for interference with an easement. Id. 479. The case does not support the contention that the court can or should award nominal damages in addition to actual damages which were proven.
Judgment is entered for the plaintiffs on the complaint for damages of $10,300. Judgment is entered for the plaintiffs on the counterclaim.
VERTEFEUILLE, J.